**THE SHELL COMPANY (PUERTO RICO) LIMITED, Plaintiff(s)**

v.

**LOS FRAILES SERVICE STATION, INC., Defendant(s).**

**Civil No. 03–1623(FAB).**

United States District Court, D. Puerto Rico.

Jan. 23, 2007.

---

Lee Sepulvado–Ramos, Sepulvado & Associates, PSC, Rafael Perez–Bachs, Nannette Berrios–Haddock, Raul M. Arias–Marxuach, McConnell Valdes, San Juan, PR, for Plaintiff.

Carlos E. Montanez, Carlos E. Montanez Law Office, Jose L. Gonzalez–Castaner, Gonzalez Castaner & Morales Cordero Law Office, San Juan, PR, for Defendant.

## OPINION AND ORDER

BESOSA, District Judge.

On June 3, 2003, The Shell Company (Puerto Rico) Ltd. ("Shell")[1] filed suit against Los Frailes Service Station, Inc. ("LFSS") alleging trademark infringement under the Lanham Act, 15 U.S.C. §§ 1051–1072, and violations to the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801–2806, as well as supplemental state-law claims (Docket No. 1). On August 12, 2003, LFSS answered the complaint and counterclaimed against Shell, alleging price discrimination under the Robinson–Patman Act, 15 U.S.C. § 13(a), and supplemental state-law claims (Docket No. 19). On September 28, 2006, Shell moved for summary judgment on LFSS' counterclaim (Docket No. 133–135). On November 27, 2006, LFSS opposed the motion (Docket No. 154). For the reasons discussed below, the Court **GRANTS** Shell's motion for summary judgment and dismisses the counterclaim, with prejudice.

---

1. Now known as Sol Puerto Rico Limited, but identified as Shell throughout this Opinion

## FACTUAL BACKGROUND[2]

Shell is a company organized under the laws of England, duly authorized to conduct business in Puerto Rico. Shell manufactures and sells Shell brand gasoline through its network of 177 service stations throughout Puerto Rico. All petroleum products sold by Shell to LFSS were dispatched from Shell's plant in Cataño, Puerto Rico.

LFSS is a corporation organized under the laws of Puerto Rico. It owns a parcel of land located in Guaynabo, Puerto Rico, where it operated a service station for the sale of gasoline and other petroleum products since at least 1983. LFSS is a family-owned corporation whose shares were owned by the conjugal partnership constituted by Jorge Melendez and his former wife Maria Calero.

On April 11, 1997, LFSS and Shell entered into a dealership agreement for the operation of the service station. Also on April 11, 1997, the parties signed an amended lease agreement, which superseded a prior lease agreement that they had signed on February 19, 1992.

Shell sold gasoline to LFSS for resale at the service station. LFSS placed its purchase orders for petroleum products with Shell's customer service department. Once the order was processed, Shell delivered the gasoline to the station from its Cataño plant.

In July 2001, Shell implemented a Competitive Adjustment Program ("CAP") which terms and conditions were as follows:

(1) The island of Puerto Rico would be divided into geographic areas of competitive influence in which Shell dealers were facing particular competitive situations and were also in likely competition with each other and/or competing under equal circumstances. These geographic areas were defined as Price Reference Zones ("Zones");

(2) Participants in the CAP were offered a competitive adjustment to their wholesale prices, which consisted of a deduction specifically reflected in Shell's invoices for the sale of gasoline; and

(3) Competitive adjustments were granted to participants, provided that they did not exceed a particular maximum suggested retail price.

LFSS voluntarily joined the CAP in July 2001, and participated in it until the termination of the dealership relationship on May 23, 2003. Prior to its participation in the CAP, LFSS sold an average of 454,908 gallons of gasoline per month. After it joined the CAP, its sales increased to an average of 525,433 gallons of gasoline per month.

During the years 2000 through 2003, LFSS disbursed several loans totaling $764,787 to its shareholders. These loans remain outstanding. LFSS experienced cash flow problems during the months of January, February, March, and May 2003, due to which several checks it issued, including to Shell's order, were returned for

and Order.

**2.** The relevant facts are taken from Shell's statement of material facts (Docket No. 134) because LFSS did not submit an opposing statement of material facts. *See* Local Civ. Rule 56(e) ("Facts contained in a supporting or opposing statement of material facts, if supported by record citations ..., shall be deemed admitted unless properly controvert-

ed"); *Morales v. A.C. Orssleff's EFTF,* 246 F.3d 32, 33 (1st Cir.2001) ("We have recently reiterated, with reference to this particular rule, that 'parties ignore [it] at their own peril,' and that 'failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies deeming the facts presented in the movant's statement of undisputed facts admitted.' ").

insufficient funds. LFSS had taken loans from bank institutions totaling $675,000 prior to joining the CAP in July 2001. LFSS made payments in excess of $200,000 to its president during fiscal years 2000, 2002, and 2003, and payments in excess of $100,000 during fiscal year 2001.

## DISCUSSION

### A. *Summary Judgment Standard*

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *See also Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52. (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49 (1st Cir. 2000).

For a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The dispute is "genuine" when a reasonable jury can return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is "insufficient to defeat a properly supported motion for summary judgment." *Id.* at 252. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

### B. *Shell's Motion for Partial Summary Judgment*

#### 1. *Price Discrimination Under the Robinson–Patman Act*

Section 2(a) of the Robinson–Patman Act prohibits discrimination in price between purchasers of goods of like grade and quality, where the effect may be

to lessen competition substantially or to tend to create a monopoly. 15 U.S.C. § 13a. In order to establish a *prima facie* case of price discrimination under section 2(a), a plaintiff must show:

> (1) two or more contemporaneous sales by the same seller; (2) at different prices; (3) of commodities of similar grade and quality; (4) at least one of the sales was in interstate commerce; (5) price discrimination tended to lessen substantially competition or create a monopoly in any line of commerce; and (6) this price discrimination injured plaintiff.

*Walpa Constr. Corp. v. Mobile Paint Mfg. Co.*, 701 F.Supp. 23, 27 (D.P.R.1988). "The statute encompasses two different types of violations: primary line violations and secondary line violations. Primary line violations are directed at injuring competition with the discriminating seller's direct competitors, whereas secondary line violations are directed at injuring competition among the discriminating seller's customers." *Able Sales Co., Inc. v. Compañía de Azúcar de Puerto Rico*, 406 F.3d 56, 60 (1st Cir.2005). "To satisfy the 'in commerce' requirement, one of the discriminatory sales must cross a state line. Because this requirement is jurisdictional, the burden to prove the interstate character of the sales is on the party asserting subject matter jurisdiction." *Id.* at 61 (citations omitted). "[F]or the purposes of section 2(a), injury to competition is established *prima facie* by proof of a substantial price discrimination between competing purchasers over time." *Falls City Industries, Inc. v. Vanco Beverage, Inc.*, 460 U.S. 428, 435, 103 S.Ct. 1282, 75 L.Ed.2d 174 (1983)(*citing Federal Trade Commission v. Morton Salt Co.*, 334 U.S. 37, 46, 68 S.Ct. 822, 92 L.Ed. 1196 (1948)).

 This case falls under the category of secondary-line price discrimination.

"A secondary-line violation occurs when a large purchaser uses its purchasing power to obtain lower prices from a manufacturer, allowing it to undersell its competitors." *Water Craft Management LLC v. Mercury Marine*, 457 F.3d 484, 487 n. 2 (5th Cir.2006)(*citing Eximco, Inc. v. Trane*, 737 F.2d 505, 515 (5th Cir.1984)). A manufacturer may not "be held liable for secondary-line price discrimination under the Robinson–Patman Act in the absence of a showing that the manufacturer discriminated between dealers competing to resell its product to the same retail customer." *Volvo Trucks North America, Inc. v. Reeder–Simco GMC, Inc.*, 546 U.S. 164, 126 S.Ct. 860, 869, 163 L.Ed.2d 663 (2006).

 Shell argues that LFSS' claims under the Robinson–Patman Act must be dismissed because it cannot establish that it was in actual competition with one or more of the "favored" dealers. *George Haug Co., Inc. v. Rolls Royce Motor Cars Inc.*, 148 F.3d 136, 141 (2d Cir.1998)("We note initially that as a prerequisite to establishing competitive injury in a secondary line price discrimination case, a plaintiff must prove that 'it was engaged in actual competition with the favored purchaser(s) as of the time of the price differential.' "). "[T]o satisfy this 'competitive nexus' requirement, 'it must ... be shown that, as of the time the price differential was imposed, the favored and disfavored purchasers competed at the same functional level, i.e., all wholesalers or all retailers, and within the same geographic market.' " *Id.* at 142 (*quoting Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*, 842 F.2d 578, 585 (2d Cir.1987)).

 LFSS in fact offers absolutely no evidence that it is in actual competition with any gasoline retailer, much less a favored one. LFSS merely argues that pursuant to a local law, the entire island of

Puerto Rico is to be considered one price zone and, thus, it is in competition with all the gasoline retailers in Puerto Rico. *See* P.R. Laws Ann. tit. 23 § 1104. The argument fails, first, because a the language declaring the entire island as one price zone was not added to the statute until August, 2005, over two years after the events leading up to the termination of the dealership relationship occurred, and is not meant to be applied retroactively, and second, because the dispositions found in a state law are not controlling when the Court is faced with a question of federal antitrust law. *See, e.g., Ayers v. Pastime Amusement Co.,* 259 F.Supp. 358, 361 (D.S.C.1966)("After a careful consideration of the pertinent authorities the court is convinced that principles of federal and not state law must govern the issues here since plaintiffs' causes of action arise and are predicated upon federal antitrust statutes.").

In the alternative, LFSS argues that whether or not it is in competition with other retailers is a factual issue and it must be given the opportunity to present evidence of that competition at trial. LFSS, however, does not make a proffer of what evidence it intends to present at trial in support of its contention. Without such showing, and after failing to comply with Local Civil Rule 56(e), LFSS has failed to create a trial-worthy issue and, therefore, has not established that it is in actual competition with a favored retailer.[3]

Even assuming *arguendo* that LFSS could show that it is in actual competition with a favored retailer, LFSS has not established that the price difference substantially injured competition. Rather than presenting evidence that its sales were negatively affected or that it lost customers to favored retailers, LFSS relies on the *Morton Salt*[4] rule, which provides that, "for the purposes of secondary-line claims under section 2(a), 'injury to competition is established *prima facie* by proof of a substantial price discrimination between competing purchasers over time.'" *Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.,* 79 F.3d 182, 193 (1st Cir.1996)(*quoting Falls City Industries,* 460 U.S. at 435, 103 S.Ct. 1282). However, "[i]n the absence of direct evidence of displaced sales, this inference may be overcome by evidence breaking the causal connection between a price differential and lost sales or profits." *Falls City Industries,* 460 U.S. at 435, 103 S.Ct. 1282.

In order to support the *Morton Salt* inference, LFSS submits a summary of invoices for LFSS and two other stations, showing the prices at which Shell sold gasoline to each of them, as well as the discount each received (Docket No. 154, Exh. 3). LFSS claims that the exhibit shows a price differential of four cents ($0.04) beginning in April 2002 between the prices at which Shell sold gasoline to LFSS and to the Alejandrino Service Sta-

---

**3.** In a motion for summary judgment that it filed on January 3, 2007 (Docket No. 163), and which the Court struck from the record because it was filed untimely, LFSS expanded on arguments that Shell sold gasoline at lower products to another retailer which is located only a few miles away. LFSS did not, however, offer evidence that it is in actual competition with that retailer, except for an expert's deposition testimony that he thought both service stations should have been included in the same price zone, not because they

were in actual competition, but because the same non-Shell service station was used as the basis to set the prices at which they could sell gasoline. This argument is still insufficient evidence to establish actual competition, and would have fared no better had the Court actually considered the stricken motion.

**4.** *FTC v. Morton Salt Co.,* 334 U.S. 37, 68 S.Ct. 822, 92 L.Ed. 1196 (1948).

tion, the alleged favored retailer. LFSS argues that this price differential continued throughout the three-year period during which the CAP was in operation.

Shell counters that even if LFSS can establish the price differential over the an extended period, LFSS cannot establish an injury because the CAP was not the culprit for LFSS' loss of profits. The record shows that during the CAP, LFSS' sales volume actually increased in comparison with the years prior to implementation of the CAP. LFSS sold an average of 454,908 gallons of gasoline in the year 2000. But after the CAP, LFSS' sales increased to 525,433 gallons per month in 2001 and 466,208 gallons per month in 2002. Clearly, LFSS did not lose customers to other competitors under the CAP. On the contrary, its sales increased. Even if LFSS earned a lesser profit, the increase in volume should have worked to offset any loss in profits.[5]

Furthermore, Shell posits that the reason LFSS suffered from economic problems was that its corporate officers were raiding the corporate coffers by means of lavish loans. The record shows that during the years 2000 through 2003, LFSS disbursed to its officers loans in amounts totaling $764,787.00, despite the fact that it was operating at a loss.

The Court finds that this showing by Shell is certainly sufficient to break the causal connection between the CAP and LFSS' lost profits, thus defeating the *Morton Salt* inference. *See, e.g., Richard Short Oil Co., Inc. v. Texaco, Inc.,* 799 F.2d 415, 421 (8th Cir.1986)("There will not be liability, however, even if there has been a difference in price, when the injury is the result of the plaintiff's own competitive shortcomings, rather than a merely coincidental discrimination in price."). Without any evidence left to support their

allegations, LFSS has failed to establish a claim for price discrimination under the Robinson Patman Act.

### 2. *Price Discrimination Under Puerto Rico Antitrust Laws*

In Puerto Rico, price discrimination is proscribed by P.R. Laws Ann. tit. 10 § 263, which reads the same as the Robinson Patman Act, except that the Puerto Rico law does not include the Robinson Patman Act's requirement that at least one of the transactions must occur in interstate commerce. Because both statutes are nearly identical, and because the Puerto Rico courts generally follow federal antitrust law when interpreting local antitrust laws, the above discussion is also applicable to LFSS' claims under local antitrust law. *See, e.g., Pressure Vessels of Puerto Rico v. Empire Gas de Puerto Rico,* 137 D.P.R. 497, 509–512 (1994); *Caribe BMW v. Bayerische Motoren Werke,* 19 F.3d 745, 754 (1st Cir.1994). Therefore, for the same reasons discussed above, LFSS' claims under the antitrust laws of Puerto Rico must also be dismissed.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Shell's motion for summary judgment. LFSS' counterclaims under the Robinson Patman Act and the Puerto Rico antitrust law are hereby dismissed **with prejudice.**

IT IS SO ORDERED.

---

**5.** The Court notes that LFSS has submitted no economic evidence whatsoever to compare its sales and profits before and during the CAP.