# United States Court of Appeals
## For the First Circuit

No. 09-1279

THE SHELL COMPANY (PUERTO RICO) LIMITED,

Plaintiff, Appellee,

v.

LOS FRAILES SERVICE STATION, INC.,

Defendant, Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Lynch, Chief Judge,
Selya and Lipez, Circuit Judges.

Yvonne M. Menéndez-Calero for appellant.
Raul M. Arias-Marxuach with whom Nannette Berríos Haddock,
Frank LaFontaine, and McConnell Valdes LLC were on brief for
appellee.

May 6, 2010

**LYNCH**, **Chief Judge**.  This Petroleum Practices Marketing Act suit is between the plaintiff, Shell Company (Puerto Rico) Limited ("Shell"), and defendant, the Los Frailes Service Station, Inc. ("LFSS"), which owned and operated the Los Frailes gasoline service station in Guaynabo, Puerto Rico as a Shell franchisee from 1997 until 2003.  Shell terminated LFSS's franchise, and this appeal by LFSS primarily concerns the permanent injunction awarding Shell relief against LFSS and the dismissal of LFSS's counterclaims.  The complications in this case arise from LFSS's dual status as the owner of the service station and surrounding property, in which capacity it leased the property to Shell, and as a retailer-franchisee, in which capacity LFSS subleased the service station from Shell to operate it.

Since December 2003, when Shell first obtained a preliminary injunction, LFSS has been ordered to cease using Shell's trademarks, trade dress, and color patterns; to comply with all post-termination contractual provisions; and to "immediately surrender the station in question, the storage tanks and all pertinent equipment to Shell, in order for Shell to designate a third party to operate the same."  The Shell Co. (P.R.) Ltd. v. Los Frailes Serv. Station, Inc. (Shell I), No. 03-1623, slip op. at 35 (D.P.R. Dec. 2, 2003).

On January 23, 2007, the district court granted Shell summary judgment on LFSS's counterclaims.  See The Shell Co. (P.R.)

-2-

Ltd. v. Los Frailes Serv. Station, Inc. (Shell II), 551 F. Supp. 2d 127, 134 (D.P.R. 2007). The district court converted the preliminary injunction to a permanent injunction on January 29, 2007, ordering and compelling LFSS to cease any use of Shell trademarks, trade dress, or color patterns, to comply with the post-termination provisions of its franchise agreements with Shell, and, in addition, to allow Shell "to continue in possession of the Los Frailes Service Station, along with the subterraneous storage tanks and all pertinent equipment, until the expiration of [Shell's] rights under the lease agreement between the parties," set to expire in 2014. The Shell Co. (P.R.) Ltd. v. Los Frailes Serv. Station, Inc. (Shell III), No. 03-1623, slip op. at 2-3 (D.P.R. Jan. 31, 2007).[1] In the same order, the district court denied LFSS's motion to reconsider its grant of summary judgment to Shell on LFSS's counterclaims and dismissed LFSS's breach of contract counterclaim for failure to prosecute. Id. at 1-2. In the meantime, LFSS has gone through bankruptcy, and Shell has changed its name to Sol Puerto Rico Limited following an

---

[1] The district court later issued an amended order clarifying that Shell was entitled to injunctive relief only under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), to compel LFSS to stop further use of Shell's trademarks, trade dress, and color patterns. See The Shell Co. (P.R.) Ltd. v. Los Frailes Serv. Station, Inc. (Shell V), No. 03-1623, slip op. at 1-2 (D.P.R. Dec. 30, 2008) (amended judgment); The Shell Co. (P.R.) Ltd. v. Los Frailes Serv. Station, Inc. (Shell IV), 596 F. Supp. 2d. 193, 201-03, 205 (D.P.R. 2008) (opinion and order).

-3-

acquisition and share purchase in 2006.[2]  See Shell IV, 596 F.
Supp. 2d at 196 n.1.  Shell has been in control of the property
since 2003.

LFSS appeals from various provisions of the permanent
injunction, the grant of summary judgment to Shell on LFSS's
federal and state law counterclaims against Shell, and the
dismissal of LFSS's state law breach of contract counterclaim with
prejudice (for failure to prosecute).  We hold that the district
court did not abuse its discretion by enjoining LFSS from further
use of Shell's trademarks, trade dress, and color patterns under
Section 43(a) of the Lanham Act.  We further hold that the district
court did not abuse its discretion by compelling LFSS to comply
with the post-termination provisions of its franchise agreements
with Shell.  The district court did, however, abuse its discretion
by extending the injunction to compel LFSS "to allow [Shell] to
continue in possession of the Los Frailes Service Station . . .
until the expiration of [Shell]'s rights under the lease agreement
between the parties" in 2014.  Shell III, slip op. at 2.  We vacate
that provision of the injunction, without prejudice to Shell's
seeking further injunctive relief at a future date.  We also hold
that the district court properly granted Shell summary judgment on

---

[2]     In order to accurately describe the parties' interactions
and the events leading up to this suit, all of which occurred
before the merger, we refer to the plaintiff as "Shell" throughout
and discuss the significance of the merger where relevant.

LFSS's counterclaims and that there was no abuse of discretion in dismissing LFSS's breach of contract counterclaim for failure to prosecute.

## I. Factual Background

The following facts are either uncontested or were stipulated by the parties.

The gasoline service station located at the corner of State Road 177 and Muró Street in the Los Frailes area of Guaynabo has long been one of the busiest in the region. LFSS has owned this station and the property surrounding it since 1977. For several decades, LFSS sold Shell-brand gasoline as an independent retailer under a lease arrangement with Shell. In 1997, LFSS became a Shell franchisee.

Three contracts, all signed on April 11, 1997, defined the franchise relationship between Shell and LFSS: an amended lease agreement, a retailer/sublease agreement, and a trademark and equipment agreement.

The amended lease agreement extended Shell's 1992 lease of the service station and its surrounding property until February 28, 2014. The "primary and essential purpose" of the lease was to maintain a service station there, and, under the amended lease, Shell did not need LFSS's permission to sublease the station to a third party retailer to operate. In exchange for this leasehold, Shell agreed to pay graduated rent to LFSS based on the number of

-5-

gallons of gasoline the retailer (whether LFSS or a third party) bought from Shell each month.

Under the retailer/sublease agreement, Shell then subleased the station back to LFSS to operate as a Shell franchisee. As a Shell franchisee, LFSS had the right to operate the station under the Shell name, as an exclusive retailer of Shell-brand petroleum products. In exchange, LFSS agreed to certain obligations, including to purchase a minimum average of 300,000 gallons of fuel from Shell each month, to pay for Shell products on time each month on the check or credit terms set by Shell, to keep the station open and running during its hours of operation, and to operate the station for the exclusive purpose of selling only Shell-brand products.

The trademark and equipment agreement governed LFSS's exclusive use of Shell trademarks and of equipment Shell provided to LFSS and also set out LFSS's maintenance, inventory, and delivery obligations. This agreement recognized Shell's ownership of the underground storage tanks and other equipment at the station and gave LFSS the right to use this equipment only to sell and store Shell-brand fuel when operating the station.

These three agreements also included important provisions governing when the agreements could be terminated and the consequences of termination. The parties contest the

interpretation of many of these provisions, and we discuss them further below.

From 1997 to 2000, LFSS operated the Los Frailes station as a Shell station under the terms of these agreements. Beginning in 2000, the parties made several amendments to the lease agreement. A February 15, 2001, amendment, at issue in this case, gave LFSS a temporary rent benefit from Shell to encourage a higher volume of gasoline sales.[3] Under the amendment, this rent benefit would automatically continue every month unless Shell notified LFSS otherwise in writing.

On July 2, 2001, Shell informed LFSS and its other Puerto Rican franchisees that it was implementing a Competitive Adjustment Program (CAP), and LFSS agreed to participate. The program established certain price zones for retailers and set maximum retail prices for Shell's retailers in those zones. In exchange, the CAP gave retailers discounts on wholesale fuel prices, again based on those zones. Following an investigation, the Puerto Rico Department of Justice ordered Shell to cease the CAP program on January 30, 2004, on the ground that it violated Puerto Rican antitrust law. Shell complied.

---

[3] Specifically, in addition to the rent specified in the lease, Shell agreed to pay LFSS an additional $0.02 per gallon for the first 480,000 gallons sold, and an additional $0.03 per gallon for every gallon over 490,000 that LFSS sold.

LFSS participated in the CAP for the duration of its franchise with Shell. Though LFSS now contests whether the CAP displaced the temporary rent benefit Shell implemented in February 2001, LFSS does not contest the district court's factual finding that LFSS sent Shell an April 9, 2002 letter proposing "a temporary adjustment in rent for LFSS as we had in the first quarter of last year." We discuss the CAP in further detail below.

By early 2003, LFSS was suffering from cash flow problems and so did not pay for more than $80,000 worth of Shell's fuel deliveries. Shell, pursuant to the retailer/sublease agreement, also implemented a hard cash payment policy and required LFSS to pay for Shell products by certified check at delivery.

During the weekend of May 17 and 18, 2003, LFSS instead tried to pay for two deliveries with personal checks. On Monday, May 19, Shell told LFSS that until LFSS paid for the weekend deliveries with certified checks, Shell would not make any further deliveries. LFSS did not comply; there were no further deliveries, LFSS ran out of fuel to sell, and the station temporarily closed. That same day, May 19, LFSS sent Shell a letter stating that Shell had not paid the February 2001 additional rent benefit since July 2001 (when the CAP went into effect), that Shell had not sent written notice of its cancellation, and that Shell therefore immediately owed the balance of the additional rent from July 2001 until April 2003.

On May 21, 2003, LFSS sent Shell a letter purportedly cancelling their entire commercial relationship, including the lease, citing Shell's alleged failure to pay LFSS the additional rent and its alleged obligation to deliver fuel to LFSS. LFSS then purchased fuel from other refiners and distributors, covered some but not all of the Shell trademarks at the station, and began selling non-Shell-brand fuel. LFSS also put up signs saying "We Do Not Sell Shell Gasoline." The signs were not prominently displayed.

On May 23, 2003, Shell informed LFSS by letter that it was terminating LFSS's franchise, which Shell said terminated the retailer/sublease agreement and trademarks and equipment agreement but not the underlying lease agreement under which Shell leased the property from LFSS. Shell said that LFSS's termination of the lease was invalid because LFSS had not complied with the lease termination provisions. Shell then demanded that LFSS honor its obligations under the lease and under the post-termination provisions of the retailer/sublease and equipment and trademark agreements by immediately vacating the service station premises and turning over Shell's equipment.

LFSS instead continued to operate the service station by selling non-Shell-brand fuel at the service station. Shell then brought assorted federal and state law claims against LFSS in the

federal district court of Puerto Rico less than two weeks later, on June 3, 2003, eventually culminating in this appeal.

## II. The Parties' Claims

Before delving into the legal analysis, we summarize Shell and LFSS's respective claims and counterclaims.

Shell's claims against LFSS proceed from Shell's contention that it validly terminated LFSS's franchise on May 23, 2003. Shell says it was entitled to do so under the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801 et seq., a federal law that regulates franchisors' termination of franchises, because of LFSS's failure to pay for fuel deliveries, its unreasonable closing of the station, and its sale of non-Shell fuel while displaying Shell trademarks.

Shell claims LFSS's post-termination actions violated Shell's rights in two respects. First, Shell says that LFSS created a likelihood that consumers would be confused or deceived when it sold non-Shell products while displaying Shell trademarks, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). On this basis, Shell requested, and the district court granted, injunctive relief to stop LFSS from using Shell trademarks, trade dress, or color patterns. See Shell IV, 596 F. Supp. 2d at 203-05; Shell I, slip op. at 29-31.

Second, Shell says its termination of the franchise left its underlying lease of the station from LFSS intact. Shell

further claimed that LFSS's refusal to vacate the premises and to allow Shell to exercise its property rights over the station as a lessor violated the terms of the lease, as well as various post-termination provisions in the retailer/sublease and trademark and equipment agreements requiring LFSS to relinquish possession of the station. This was the district court's basis for compelling LFSS to comply with all post-termination contractual provisions and for the separate provision of the injunction allowing Shell to remain in possession of the service station until the expiration of its lease in 2014. See Shell I, slip op. at 27-29, 32-34.

LFSS makes several arguments as to why the district court abused its discretion in granting Shell a permanent injunction. LFSS first claims that it validly terminated all contracts, including the lease, on May 21, 2003, two days before Shell purportedly terminated the franchise. In the alternative, LFSS says, Shell's termination of the franchise was not valid under the PMPA, and the district court erred in finding otherwise.

LFSS further argues that the district court erred in granting injunctive relief. It contests the injunction on Shell's Lanham Act claim, urging that the evidence was contradictory and insufficient to support a likelihood of confusion. In any event, LFSS says, Shell is not entitled to the specific remedy of an injunction to enforce the lease, which gives Shell possession until 2014, whether under the PMPA or any of Shell's other claims, and

the district court erred in finding otherwise. This last issue is potentially the most difficult in the case, raising questions about the scope of injunctive relief available to franchisors under the PMPA.

LFSS also argues that the district court erred in granting Shell summary judgment on LFSS's counterclaim that Shell's CAP program violated federal and Puerto Rican antitrust law. Specifically, LFSS argues that the district court abused its discretion by striking LFSS's cross-motion for summary judgment and denying its motion for reconsideration. Its main substantive challenge, however, is that the district court erroneously made factual inferences in Shell's favor when granting summary judgment to Shell on LFSS's antitrust claims and that there were material issues of fact precluding summary judgment. Finally, LFSS says the district court abused its discretion by dismissing its state law breach of contract counterclaim for failure to prosecute, because, LFSS insists, it diligently asserted this claim.

We analyze LFSS's challenges to the permanent injunction, summary judgment, and dismissal of its breach of contract counterclaim in turn. We vacate only the portion of the district court's injunction allowing Shell to continue in possession of the Los Frailes service station until 2014, when its lease expires, and we affirm the district court's judgment on all other grounds.

III. Shell's Claims against LFSS

We review a district court's grant of a permanent injunction for abuse of discretion; we review its underlying conclusions of law de novo and any factual findings for clear error.[4] García-Rubiera v. Calderón, 570 F.3d 443, 455-56 (1st Cir. 2009).

A plaintiff seeking a permanent injunction before a district court must ordinarily show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006); see also CoxCom, Inc. v. Chaffee, 536 F.3d 101, 112 (1st Cir. 2008). LFSS's claims of error cut across these criteria.

---

[4]    LFSS's argument that the district court could not convert the preliminary injunction into a permanent injunction without an evidentiary hearing fails.  The district court converted the preliminary injunction into a permanent injunction only after issuing a show cause order to LFSS, and only after determining that LFSS had not advanced any new evidence or legal arguments beyond what it had presented at the preliminary injunction hearing.  Under those circumstances, an evidentiary hearing would have served little purpose, and the district court's conversion was not error. See HMG Prop. Investors, Inc. v. Parque Indus. Rio Canas, Inc., 847 F.2d 908, 915 (1st Cir. 1988); cf. United States v. Owens, 54 F.3d 271, 276-77 (6th Cir. 1995).

-13-

A.          LFSS's Purported Termination of the Lease Agreement

LFSS's primary argument on appeal is that LFSS validly terminated its lease of the Los Frailes station to Shell on May 21, 2003, and that the district court therefore erred by granting Shell an injunction that gave Shell possession of the service station.

We reject this argument; LFSS's attempt to terminate the lease on May 21 was plainly invalid.[5] Even assuming dubitante that Shell had defaulted on its lease obligations, article 17 of the lease provided that LFSS could terminate the lease in the event of default only after a sixty-day curative period.  LFSS admits that its May 21, 2003, letter of termination cited Shell's purported breaches as the grounds for termination and did not comply with the sixty-day curative requirement.

Instead, LFSS claims that a different part of the lease agreement, article 7, authorized LFSS to terminate the lease with Shell immediately, without any sixty-day curative period, on the sole condition that LFSS pay Shell for the cost of the improvements and alterations Shell had made to the station, less depreciation.

Because LFSS only developed this interpretation of article 7 at oral argument and not in its briefs, this argument is

---

[5]     The parties have not briefed the question of whether this court is, in any event, bound by the bankruptcy court's determination that the lease remained in effect and Shell retained all its rights as a lessor under that agreement, though the district court relied on that judgment in rejecting LFSS's claims below.  See Shell III, slip op. at 3.

waived.  See Mass. Museum of Contemporary Art Found. v. Büchel, 593 F.3d 38, 65 (1st Cir. 2010).  Even if the argument were properly before this court, it would fail.  Article 7 states in relevant part that "[i]f this lease is terminated before the expiration of its term . . . for causes attributable to [LFSS]," LFSS, "in addition to any other remedy under the contract," must "immediately pay [Shell] an amount equivalent to the amount not depreciated (or amortized) of the improvements and permanent alterations made by [Shell] in the Property, in the Station or in the surrounding areas."  This is plainly a liquidated damages provision addressing the consequences of termination, not the conditions under which the parties could terminate the agreement.  It cannot be construed as an open-ended alternative to the limitations on termination set out in article 17.

B.      Shell's PMPA Claim

In the alternative, LFSS argues that the district court erred in concluding as a matter of law that Shell's termination of LFSS's franchise complied with the PMPA.  Absent a valid termination, LFSS suggests, Shell suffered no irreparable injury, since Shell's asserted harms arose from LFSS's alleged failure to comply with the consequences of franchise termination.  Those consequences include the loss of LFSS's right to use Shell's trademarks and equipment and to sublease and operate the service

station.  This argument also fails; we reject its assumption that Shell's termination was invalid.

The PMPA, enacted in 1978, addressed franchisors' "allegedly unfair franchise terminations and nonrenewals in the petroleum industry" by "establish[ing] minimum federal standards governing the termination and nonrenewal of petroleum franchises." Mac's Shell Serv., Inc. v. Shell Oil Prods. Co. LLC, 130 S. Ct. 1251, 1255 (2010).  Under provisions of the PMPA, franchisors can terminate or fail to renew a franchise "only if the franchisor provides written notice and takes the action in question for a reason specifically recognized in the statute."  Id.[6]

Reasons recognized in the statute for termination include "[t]he occurrence of an event which is . . . relevant to the franchise relationship and as a result of which termination of the franchise . . . is reasonable."  15 U.S.C. § 2802(b)(2)(C).  The PMPA explicitly includes "failure by the franchisee to pay the franchisor in a timely manner," id. § 2802(c)(8), "failure by the franchisee to operate the marketing premises for . . . an unreasonable period of time" under the circumstances, id. § 2802(c)(9)(B), and "willful adulteration, mislabeling or misbranding of motor fuels or other trademark violations of the franchisee," id. § 2802(c)(10), as examples of such events.

---

[6]    It is clear, and LFSS does not contest, that Shell provided adequate written notice of the termination here.

LFSS does not contest that it failed to make payments on time, temporarily closed the station, and sold non-Shell-brand fuel. Rather, it argues that the PMPA requires courts to determine whether a termination based on these events was objectively reasonable under the circumstances, not just whether an event listed under § 2802(c) technically occurred. The circumstances here, LFSS says, made Shell's termination unreasonable, because the cash flow problems leading to these three events were caused by Shell's alleged violation of antitrust laws and its purported failure to pay LFSS the temporary rent benefit Shell agreed to in February 2001. Those two allegations are also the basis for LFSS's counterclaims against Shell.

The district court rejected this argument, holding as a matter of law that Shell's termination of the franchise was per se reasonable because the termination was based on those three, explicitly listed statutory grounds for termination. See Shell I, slip op. at 19-21. The district court's reasoning suggested that the termination was valid even under an objective reasonableness standard. It found that LFSS's claim that Shell's nonpayment of the rent benefit caused LFSS's cash flow problems lacked merit because of LFSS's April 2002 admission in its letter to Shell that the February 2001 rent benefit was no longer in effect. Id. at 22.

We need not evaluate the wisdom of a per se rule that

-17-

termination is reasonable if an event listed in § 2802(c) occurs.[7]
LFSS could not prevail even if we reviewed whether Shell's
termination was objectively reasonable. The district court did not
clearly err in finding that the February 2001 rent benefit was
temporary, long since terminated, and could not have been
responsible for LFSS's May 2003 cash flow problems. In any event,
uncontested record evidence shows that LFSS's cash flow problems,
culminating in its inability to pay Shell for deliveries, had a
number of causes unrelated to Shell's actions with respect to the

---

[7]    The district court's interpretation of the PMPA reflects
the law of this circuit: if any of the events listed in § 2802(c)
occur, "termination is conclusively presumed to be reasonable as a
matter of law." Desfosses v. Wallace Energy, Inc., 836 F.2d 22, 26
(1st Cir. 1987). At least one other circuit also adopted this
rule. See Hinkleman v. Shell Oil Co., 962 F.2d 372, 377 (4th Cir.
1992) (per curiam). But see Patel v. Sun Co., Inc., 141 F.3d 447,
456-57 (3d Cir. 1998) ("There is no question that at least some of
the § 2802(c) relevant event exceptions mandate some form of
judicial scrutiny."); Marathon Petroleum Co. v. Pendleton, 889 F.2d
1509, 1512 (6th Cir. 1989) (suggesting that all terminations for
events listed in § 2802(c) are subject to judicial scrutiny to
determine whether they were objectively reasonable); Sun Refining
& Mktg. Co. v. Rago, 741 F.2d 670, 672-74 (3d Cir. 1984) (holding
that in light of the PMPA's purpose of benefitting franchisees,
courts must look to whether franchisor terminations under
§ 2802(c)(8) and (9) are objectively reasonable and not presume
reasonableness per se).

CAP or the temporary rent benefit.[8]  Shell's termination of the franchise was valid under the PMPA.

C.          Shell's Lanham Act Claim

LFSS also challenges the district court's grant of a permanent injunction preventing LFSS from further using Shell trademarks, trade dress, and color patterns.  The district court reasoned that this relief was warranted under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), because LFSS's sale of non-Shell products while displaying Shell trademarks was likely to cause confusion as to the origin of LFSS's petroleum products.  See Shell I, slip op. at 29-32; Shell IV, slip op. at 17-18 (limiting injunctive relief to § 1125(a)).

Section 43(a) of the Lanham Act creates civil liability for "any person who . . . uses in commerce any word, term, name, symbol, or device . . . which . . . is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."  15 U.S.C. § 1125(a)(1)(A).  This circuit generally looks to a non-exclusive, multi-factor list to determine whether a likelihood of confusion

_____

[8]     Specifically, in 2000, before the CAP or the February 2001 rent benefit were implemented, LFSS's net operating income was $33,440, but it loaned more than $150,000 to its stockholders during the fiscal year.  LFSS also took out substantial loans totaling about $675,000 before implementing the CAP, and LFSS paid out more than $200,000 to its president, the station operator, in 2000, 2002, and 2003.

-19-

exists.[9]  That list is merely illustrative, however; the purpose of the inquiry is simply to determine whether "the allegedly infringing conduct carries with it a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care."  Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 201 (1st Cir. 1996).

The application of those factors to the record is a highly fact-intensive inquiry.  See Visible Sys. Corp. v. Unisys Corp., 551 F.3d 65, 73-74 (1st Cir. 2008).  That is especially so given that LFSS is challenging the district court's decision to limit the evidence to Shell's photographs and the persuasiveness of that evidence.  We accordingly review the district court's finding of a likelihood of confusion for clear error, and hold that the district court did not clearly err in its finding.

There is no need to go through a mechanical application of the multi-factor list to reach this conclusion.  The district court properly rejected LFSS's argument that Shell's photographs of

---

[9]     Specifically, this circuit looks to (1) the similarity of the marks; (2) the similarity of the goods (or, in a service mark case, the services); (3) the relationship between the parties' channels of trade; (4) the juxtaposition of their advertising; (5) the classes of prospective purchasers; (6) the evidence of actual confusion; (7) the defendant's intent in adopting its allegedly infringing mark; and (8) the strength of the plaintiff's mark.
Int'l Ass'n of Machinists v. Winship Green Nursing Ctr., 103 F.3d 196, 201 (1st Cir. 1996); see also Visible Sys. Corp. v. Unisys Corp., 551 F.3d 65, 73 (1st Cir. 2008).

still-visible Shell trademarks at the Los Frailes service station are unpersuasive and unreliable evidence. LFSS presented evidence squarely challenging Shell's photographs only in 2007 and had previously made stipulations at odds with the 2007 evidence that it presented. See Shell IV, 596 F. Supp. 2d at 201-02.

Moreover, beyond the photographic evidence, it is uncontested that LFSS had operated a Shell station on the premises for more than a decade, and that LFSS covered up some, but not all, of the Shell trademarks displayed at the Los Frailes station while selling non-Shell-brand fuel. It is also uncontested that LFSS failed to alter the overall appearance of the service station, which retained the trade dress of a Shell station. LFSS further conceded before the district court that the fuel it sold after May 21, 2003, was of inferior quality to the fuel it had previously sold under Shell trademarks. Shell I, slip op. at 24. LFSS's brief on appeal concedes that the station continued to serve the same potential customers before and after the franchise termination.

These facts amply support the district court's finding that when LFSS began selling non-Shell-brand fuel without completely obscuring the Shell trademarks at the station, LFSS's actions were substantially likely to confuse reasonably prudent consumers. Given that the Los Frailes station had been identified with the Shell brand for over a decade and that Shell trademarks

-21-

were still visible at the station, LFSS's signs stating "We Do Not Sell Shell Gasoline" were not enough to avoid likely confusion, not least because customers could only see those signs after they were already at the gas pump.[10]

D.      The Provision of the Injunction Ordering LFSS to Allow Shell to Retain Possession of the Service Station until the Expiration of the Lease

We next address LFSS's argument that the district court abused its discretion in granting the portion of the injunction that compelled LFSS "to allow [Shell] to continue in possession of the Los Frailes Service Station . . . until the expiration of [Shell]'s rights under the lease agreement between the parties" in 2014. Shell III, slip op. at 2.

The district court did not provide any specific reasoning in its opinion as to why this particular provision of the injunction, guaranteeing Shell's continued presence for a number of years into the future, was necessary to remedy the irreparable

_____

[10] We likewise reject LFSS's argument that Shell lacked standing to assert an injury on its Lanham Act claims because of Shell's 2006 acquisition and share purchase and its rebranding as Sol Puerto Rico, and specifically because Sol is not the registrant of the relevant Shell trademarks. Anyone "who may suffer adverse consequences from a violation of section 1125(a) has standing to sue regardless of whether he is the registrant of the trademark." Quabaug Rubber Co. v. Fabiano Shoe Co., Inc., 567 F.2d 154, 160 (1st Cir. 1977); see also Waldman Publ'g Corp. v. Landoll, Inc., 43 F.3d 775, 784-85 (2d Cir. 1994). Sol, as the owner of numerous Shell stations, plainly has an interest in preventing the confusion of the Shell brand with the inferior-quality fuel that LFSS sold while still displaying some Shell trademarks.

harms associated with Shell's loss of goodwill and market presence. Those harms derived from LFSS's failure to comply with the consequences of its franchise termination, including the termination of LFSS's sublease of the service station from Shell and LFSS's obligation to cease operating the station as Shell's designated retailer/sublessee. Shell I, slip op. at 28-29. But the district court's injunction included a separate provision specifically requiring LFSS to comply with the post-termination provisions of the retailer/sublease agreement and the trademark and equipment agreement. Id. The portion of the injunction requiring LFSS to also allow Shell to remain in possession of the service station until its rights under the lease expired in 2014 was in addition to, and separate from, that provision. Id. The district court appears to have reasoned that the PMPA allows franchisors to obtain injunctions based on an underlying lease agreement, not merely injunctions to enforce post-termination provisions of franchise agreements. Id. at 27-29.

On appeal, LFSS does not challenge the portion of the injunction ordering it to comply with post-termination clauses in the franchise agreements. Nor does LFSS dispute that those contractual clauses provided that "[i]f this Contract is terminated or non-renewed, [LFSS] will deliver the Station and the Equipment to [Shell]" within twenty-four hours of termination. Once LFSS's sublease of the station from LFSS ended, LFSS had to vacate the

premises.  Shell then could presumably enter into another sublease with a new retailer to operate the service station.  It is unclear from the record whether that has in fact happened.

Instead, LFSS's argument is that the district court should not have added the additional portion of the injunction compelling LFSS to allow Shell to possess the station until Shell's rights under the lease expire in 2014.  LFSS is essentially arguing that franchisors like Shell cannot use the PMPA to obtain this kind of injunctive remedy, as distinct from whatever post-termination obligations LFSS has under the franchise agreements.[11]

We agree that the district court abused its discretion in ordering LFSS to allow Shell to continue in possession of the Los Frailes service station until Shell's rights under the lease expired.

Here, Shell made no showing of irreparable harm that might justify an order giving it possession of the property for the

---

[11]    Though LFSS broadly asserts that the PMPA does not allow franchisors to obtain injunctive relief against franchisees if the relief would give the franchisors property rights, LFSS does not claim that this prevents the district court from ordering LFSS to comply with its post-termination contractual obligations.  In any event, we need not decide whether the PMPA allows franchisors to obtain injunctions to enforce those kinds of obligations.  Shell's complaint also included a claim to judicially dispossess LFSS of the service station premises and equipment under Puerto Rican law, and Shell can obtain enforcement of the relevant post-termination contractual provisions on that basis.  Shell did not, however, bring any state law claims that would provide an alternate basis for it to obtain an injunctive remedy involving the lease agreement in this suit.

full term of the lease, until 2014. The post-termination provisions of the retailer/sublease and trademark and equipment contracts adequately protected Shell's right to resume possession of the station and its equipment. We see no basis for further ordering LFSS to allow Shell to possess the property until 2014 under the lease; the district court's order compelling LFSS to comply with these post-termination provisions sufficiently protected Shell's interests. The district court did not hold that any violations of the lease by LFSS may have caused discrete, irreparable harms to Shell or that injunctive relief would be the remedy for such harms.

Moreover, the terms of this portion of the injunction appear to allow Shell to continue possessing the property and service station until the lease expires even if Shell, in the future, breaches its obligations under the lease. Shell plainly cannot be entitled to that remedy, which goes even beyond ordering enforcement of the lease agreement.

We vacate this portion of the injunction alone, without prejudice. Shell is free to try to obtain this remedy at a later date if future events warrant it.

IV. LFSS's Antitrust Counterclaim against Shell

LFSS also appeals the district court's decision to strike LFSS's cross-motion for summary judgment and its grant of summary

-25-

judgment to Shell on LFSS's federal and state law antitrust counterclaims.

We review a district court's decision to strike a motion for summary judgment for an abuse of discretion when it is stricken for a failure to comply with the terms of a case-management order. See Rosario-Diaz v. Gonzalez, 140 F.3d 312, 315 (1st Cir. 1998) (holding that case management-related decisions are generally reviewed for an abuse of discretion). We review the district court's grant of summary judgment de novo and make all reasonable factual inferences in the light most favorable to the non-movant, LFSS. Boston & Me. Corp. v. Mass. Bay Transp. Auth., 587 F.3d 89, 98 (1st Cir. 2009). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Id. (internal quotation marks omitted). "We may affirm . . . on any basis in the record." Chiang v. Verizon New England, Inc., 595 F.3d 26, 34 (1st Cir. 2010). We affirm both rulings.

A.      The District Court Did Not Abuse Its Discretion in Striking LFSS's Summary Judgment Motion

LFSS's argument that the district court erred in striking its motion for summary judgment ignores the salient fact that LFSS's motion was filed on January 3, 2007, weeks after the conclusion of discovery, and well after the September 1, 2006, deadline the district court imposed for dispositive motions.

LFSS argues on appeal that the district court's extension of discovery until November 30, 2006, effectively extended or vacated the September 1 deadline. That argument, however, does not provide a persuasive ground for questioning the district court's discretionary case management decisions. See Perez-Cordero v. Wal-Mart P.R., 440 F.3d 531, 533 (1st Cir. 2006); Rosario-Diaz, 140 F.3d at 315. LFSS had numerous opportunities to request a filing extension for its summary judgment motion at various status conferences after the September deadline; it took none of them. Nor has LFSS presented any convincing reason for the delay in filing this motion.[12] There was no abuse of discretion in denying LFSS's summary judgment motion.

B.        The District Court Properly Granted Summary Judgment to Shell on LFSS's Antitrust Counterclaim

LFSS further argues that the district court improperly granted summary judgment against it on its claims under the Robinson-Patman Act and equivalent provisions of Puerto Rican antitrust law because, it says, there were contested material issues of fact as to various elements of that claim even absent the

_____

        [12]    In any event, as the district court noted in its opinion granting summary judgment to Shell, the outcome would have been no different even if it had considered this untimely motion. LFSS's purported evidence that it was in actual competition with other, nearby retailers that it said received better prices from Shell was weak at best, and it failed to show price differentials. See Shell II, 551 F. Supp. 2d at 134 n.3.

-27-

evidence submitted in its stricken motion for summary judgment. We disagree.

Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, prohibits price discrimination among different purchasers of like commodities if "the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce," among other consequences. 15 U.S.C. § 13(a). The Robinson-Patman Act prohibits, inter alia, actions "directed at injuring competition among the discriminating seller's customers," referred to as "secondary line violations." See Able Sales Co., Inc. v. Compañía de Azucar de P.R., 406 F.3d 56, 60 (1st Cir. 2005).

LFSS claims that Shell engaged in secondary-line violations through the CAP program Shell implemented in July 2001. LFSS says that in establishing price zones for retailers, the CAP offered certain Shell retailers (those operating Shell-owned stations) more favorable prices on Shell fuel than LFSS and other retailer-owned stations received.

One of the basic requirements of competitive injury, however, is a showing of "actual competition" between the disfavored retailer (LFSS) and those retailers benefitting from the price discrimination. Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc., 546 U.S. 164, 177 (2006).

The central reason LFSS's argument fails is because, as the district court found, LFSS presented no evidence that it was actually in competition with the retailers it said were the beneficiaries of the CAP. LFSS's response to Shell's motion for summary judgment simply asserted that under an August 2005 Puerto Rican law, P.R. Laws. Ann., tit. 23, § 1104, the entire island constituted a single price zone and that all retailers were presumptively each other's competitors. But that law was marginally relevant at best. It was a non-retroactive law implemented two years after this suit began, and a year after the CAP was discontinued. See Shell III, slip op. at 8-9.

We likewise reject LFSS's argument that the deposition testimony showing three other Shell stations were within two miles of LFSS meant that those stations were presumptively in competition with the Los Frailes service station. This testimony was exceptionally vague. LFSS neither presented corroboration nor explained why consumers would in practice choose among these stations. On the evidence submitted in this case, even viewing all reasonable inferences in LFSS's favor, proximity does not does not per se show actual competition.

LFSS's reply to Shell's motion for summary judgment presented no other factual or legal basis for finding LFSS was in competition with favored retailers, and its attempts on appeal to create an issue of material fact on this point all depend on the

exhibits in support of its stricken motion for summary judgment. We need go no further.[13] LFSS cannot satisfy the first prerequisite of its antitrust claims, and thus the district court properly granted Shell summary judgment.

V. LFSS's State Law Breach of Contract Counterclaim

Finally, we reject LFSS's argument that the district court erred in dismissing for failure to prosecute LFSS's breach of contract claim for additional rent due under the lease. We review dismissals for failure to prosecute under Fed. R. Civ. P. 41(b) for an abuse of discretion. See Malot v. Dorado Beach Cottages Assocs., 478 F.3d 40, 43 (1st Cir. 2007). There was no abuse of discretion here.

LFSS conceded before the district court in a 2007 show-cause hearing that this claim had been included only in a section of an earlier response to a motion to show cause. The district court could reasonably find there was no real development of this claim since 2003. LFSS's main argument before the district court was that the district court should nonetheless exercise its discretion not to deem the argument waived. LFSS made all its present arguments as to the lack of hardship to Shell before the

_____

[13]    We note that the district court amply explained why, even assuming arguendo that LFSS presented an issue of material fact on the question of whether it was in competition with favored retailers, there were no material issues of fact on the other required elements of this claim that would preclude Shell from obtaining judgment on the merits. See Shell II, 551 F. Supp. 2d at 134-35.

district court, which carefully considered them. Nor, despite the extensive filings in this case, has LFSS at any point explained why this claim has merit. LFSS has also not developed the argument as to why this claim should not have been dismissed with prejudice; in any event, the district court's decision to dismiss a claim for failure to prosecute with or without prejudice is ordinarily within its discretion. The district court did not abuse its discretion in dismissing the claim with prejudice.

We affirm the district court's grant of a permanent injunction ordering LFSS to refrain from further use of any Shell trademarks, trade dress, or color patterns and ordering LFSS to comply with relevant post-termination contractual obligations. We vacate, without prejudice, the portion of the permanent injunction ordering and compelling LFSS to allow Shell to continue in possession of the Los Frailes Service Station until the expiration of the lease in 2014. Shell is free to seek future injunctive relief should it be warranted. The district court's grant of summary judgment and its dismissal of LFSS's breach of contract counterclaim with prejudice are affirmed. No costs are awarded.

So ordered.